UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTIN VARGAS,<br><br>      Plaintiff,<br><br> v.<br><br>WHATCOM COUNTY SHERIFF'S OFFICE, et al.,<br><br>      Defendants. | CASE NO. C20-0921-JCC-MAT<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION

Plaintiff Martin Vargas filed this 42 U.S.C. § 1983 civil rights action pro se and *in forma pauperis*, raising claims associated with his apprehension by a police dog. (Dkt. 5.) He now proceeds with counsel. Defendants Whatcom County Sheriff's Office, Sheriff Bill Elfo, and K9 Deputy Stanley Streubel filed a Motion for Summary Judgment. (Dkt. 16.)[1] Plaintiff responds to the motion in part and asks that the Court deny summary judgment. (Dkt. 25.) The Court, having considered the motion, response, and remainder of the record, recommends defendants' motion for summary judgment be GRANTED and this matter DISMISSED with prejudice.

---

[1] Plaintiff did not provide a name for a "John Doe" defendant. Because service could not be effectuated on this unidentified individual, he is not considered a defendant to this action.

ORDER
PAGE - 1

BACKGROUND

Plaintiff reported his use of "meth and heroin" on the morning of September 14, 2018. (Dkt. 17, ¶3, Ex. B at 2 (booking report also stating: "will go through withdrawals").) That afternoon, Vargas, Nicholas Hale, Natalie Wiley, and "Trenton" went to burglarize a residence owned by Robert Barrow. (Dkt. 18, Ex. C (statement after arrest); Dkt. 19, Ex. A (police supplemental narrative report).) Hale told Vargas he had recently burglarized the home, stealing a shotgun and rifle. (Dkt. 18, Ex. C.)

On the date of the burglary, suspects were reported to have fled Barrow's home in a gray Honda Civic, with one suspect "described as reaching for a handgun." (Dkt. 19, Ex. A.) Police officers identified the car as registered in Wiley's name, at the address of 8277 Harborview Road in Blaine, Washington. (*Id.*) At the Harborview Road residence, officers found both Hale and Wiley, were told the officers' arrival had been observed on security cameras and that plaintiff had fled out a back window, and found a box of bank checks in Barrow's name. (*Id.*; *see also* Dkt. 18, Ex. C (Vargas reported he went out the window after seeing police arrive).) Whatcom County Acting Sergeant Jason Thompson advised officers on the scene he had located evidence belonging to Barrow inside the residence and asked them to maintain security while a warrant was obtained. (Dkt. 19, Ex. A.) Thompson also called in a K9 unit. (*Id.*)

Defendant Deputy Stanley Streubel received the call from Thompson. (Dkt. 18, ¶4.)[2] Streubel is a certified K9 officer, generalist K9 trainer, and narcotics K9 trainer with the Washington State Police Canine Association. (*Id.*, ¶2 (attesting certification obtained following about 600 hours of initial training, as well as ongoing, weekly maintenance training, biannual

---

[2] Streubel's declaration also finds support in the narrative reports produced by Streubel and Thompson addressing the events of September 14, 2018. (*See* Dkt. 18, Ex. A and Dkt. 19, Ex. A.)

ORDER
PAGE - 2

statewide training seminars, and outside training).) Since December 2012, Streubel has partnered with a police dog named Jag. (*Id*., ¶3.) Streubel certifies Jag every two years, including at the master patrol team standard, an upgrade requiring fewer point deductions and increased difficulty.

In the call regarding a potential K9 track at 8277 Harborview Road, Thompson told Streubel (1) a burglary had occurred at a home on Elk Road; (2) the suspects' car had been identified; (3) the Sheriff's Office responded to the listed address for the car on Harborview Road and found the car there; (4) one of the suspects jumped out a back window and fled on foot; and (5) it had been reported that, during the burglary on Elk Road, one of the suspects reached for a handgun in the car. (*Id*., ¶5, Ex. A.) After Streubel arrived at Harborview Road at 6:55 p.m., Thompson informed Streubel (1) the suspect who fled out the window was Martin Vargas; (2) Vargas had a felony warrant for his arrest; (3) there was probable cause for burglary in the first degree and other property crimes; (4) it was not clear whether Vargas had fled by himself; and (5) the gun reported observed at the burglary scene had not been recovered. (*Id*., ¶¶5-6.)

Streubel decided to use Jag to try to locate plaintiff, with Deputy Roosma providing coverage. (*Id*., ¶7.) It was a "higher risk track" because plaintiff was a fleeing felon with a substantial criminal history, had been reported to be in a car where someone had a handgun, and the handgun had not been recovered. Streubel assumed, given these facts, the outstanding felony warrant, and probable cause to arrest, that plaintiff was armed, did not want to be caught, was desperate to avoid incarceration, and may use a firearm to prevent his apprehension. (*Id.*, ¶¶6-7.)

Streubel, accompanied by Roosma, tracked with Jag from the window through which plaintiff jumped, through the yard and brush into a neighbor's property. (*Id*., ¶¶7-10.) While crossing a fence, he "gave a loud K9 warning, 'Sheriff's Office K9, come out or call out now, the dog will find you and he will bite you!'" (*Id.*, ¶10.) Jag tracked to the south, through four or five

yards until hitting Harborview Road, did not pick up a scent and returned to the house. At the house, Jag went towards thick, ten-to-fifteen feet high sticker bushes and a garage overgrown with the bushes, approximately fifteen feet from the window. (*Id*., ¶11.) Streubel noticed Jag change behavior as he went towards the bushes, meaning he may have picked up a scent. They circled the garage several times and Streubel gave two more loud warnings, to which there was no response.

Streubel saw a tree some fifteen feet inside of the sticker bushes and something unusual and mostly obscured alongside the tree that "did not seem to fit in." (*Id*., ¶13.) He gave at least two additional loud warnings, with no response. Given his concern regarding the still missing firearm and the wanted, fleeing felon, Streubel ordered Jag to search the bushes. (*Id*., ¶14.) Jag went in to the bushes and stopped at the tree, and Streubel heard someone, later identified as plaintiff, yell out. Streubel ordered plaintiff to show his hands and not fight the dog. Although plaintiff said he would comply, Streubel could not see anything and again ordered plaintiff to show his hands. Plaintiff made one hand visible and said he was trying to comply. Because he had verbal compliance and could see one hand, Streubel ordered Jag to release plaintiff and return.

On Streubel's order, plaintiff came out from behind the tree, holding a cell phone in his hand. (*Id*., ¶15.) Plaintiff identified himself and Roosma arrested him and took him to the road to be treated by medics. Roosma found a gun holster on plaintiff, but no gun. In a continued search of the sticker bushes, Jag found drug paraphernalia inside a sunglasses case and Streubel found, near the tree, a checkbook with credit cards belonging to Barrow. (*Id.*, ¶¶15-16.)

After the search, plaintiff told Streubel he had not surrendered to verbal warnings because he had fallen asleep. (*Id*., ¶17.) Streubel attests that, from his experience, many wanted felons do not surrender even after multiple warnings because they believe they will not be found. Another deputy took a written statement from plaintiff and transported him to the hospital for treatment.

(*Id*., ¶18.)  In another conversation at the hospital, plaintiff told Streubel he would have responded to warnings if he had not been asleep and hid in the bushes because he did not want to go to jail.

Whatcom County Sheriff's Office policy allows for the use of a canine to locate and apprehend a suspect if the canine handler reasonably believes an individual has either committed or threatened to commit any criminal offense and if any of the following conditions exist:  (1) a reasonable belief the individual poses an imminent threat of violence or serious harm to the public, any deputy, or the handler; (2) the individual is physically resisting or threatening to resist arrest and use of the canine reasonably appears necessary to overcome the resistance; or (3) the individual is believed to be concealed in an area where entry by other than the canine would pose a threat to the safety of deputies or the public.  (*Id*. at 35 (Ex. E).)  Also, absent a change in circumstances presenting an immediate threat, the use of a canine "should be conducted under such conditions that will minimize the likelihood that the canine will bite or otherwise injure the individual."  (*Id*.)

Streubel attests he and Jag complied with the policies on canines and use of force throughout the search and arrest.  (*Id*., ¶¶18-20, 22, Ex. E.)  He states Jag followed every command and the apprehension occurred with minor injuries, including scratch marks and cuts on plaintiff's arms from the sticker bushes, bite marks on his lower right leg and on top of his right foot, and one puncture wound on the top of his right foot. (*Id*., ¶¶9, 20.)  Plaintiff received one stitch for the puncture wound and the other wounds were cleaned out to prevent infection.  A deputy took photographs of the injuries and stitch, and took plaintiff to jail for booking.  (*Id*., ¶9, Ex. D.)

Plaintiff attests that, when he saw police arrive at Harborview Road, he climbed out a window he had been in the midst of repairing because he did not want to be taken into custody for an outstanding warrant.  (Dkt. 24, ¶2.)  He crawled about six feet into some bushes and concealed himself.  (*Id*.)  He was not armed with a weapon, remained quiet and still as he saw a police dog

ORDER
PAGE - 5

running loose on a search, and eventually fell asleep. (*Id.*, ¶¶2-4.) He woke up when the dog bit him on his right leg. (*Id.*, ¶4.) The dog then used used his mouth to grab plaintiff's foot, and tried to pull plaintiff out of the bushes, with his teeth tearing through plaintiff's shoe and causing extreme pain. After three-to-five bites, an officer appeared and called the dog off. (*Id.*, ¶5.)

Plaintiff denies the dog-bite injuries were minor. He contends the puncture wound on his right foot caused extensive nerve damage, resulting in chronic, excruciating pain, a lack of feeling in his foot, and a limp. (*Id.*, ¶7.) Plaintiff now walks with a cane to avoid falling and, due to his abnormal gait, developed arthritis in the joints of his right leg. (*Id.*, ¶¶7-8.) He cannot put weight on his right foot and struggles with sleep due to constant foot pain and numbness and stiffness in his right ankle and knee. (*Id.*, ¶8.) Medical providers have not been able to provide effective treatment, prescribed pain medications have not helped, and his condition continues to progressively worsen, with an uncertain prognosis. (*Id.*, ¶¶8-9.)

The record reflects that, on July 25, 2019, a court sentenced Vargas based on his guilty plea for felony counts of theft in the second degree, unlawful possession of a firearm in the first degree, and residential burglary. (Dkt. 17, ¶2, Ex. A.) Also, Thompson's report describing events on the date of the burglary reflects that officers on the scene at Harborview Road ultimately found, among other things, a shotgun, rifle, and nine millimeter handgun. (Dkt. 19, Ex. A.)

## DISCUSSION

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. This burden can be satisfied by producing affirmative evidence negating an essential element of the nonmovant's case, or by establishing the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87. However, the party opposing summary judgment must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Neither a mere scintilla of evidence, nor allegations in the complaint or unsupported conjecture or conclusory statements will suffice to defeat summary judgment. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

B.    Motion for Summary Judgment

In his complaint, plaintiff alleges violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, violation of the Washington

Constitution, and state law claims for assault and battery and outrage/intentional infliction of emotional distress. (*See* Dkt. 5.) He alleges the municipal liability of Whatcom County and Sheriff Elfo through their policy, custom, and practice of allowing for the unconstitutional use of force at issue here, failure to follow or implement a constitutional continuum of force policy, and for approval and ratification of Streubel's unconstitutional conduct.

However, plaintiff responds to the motion for summary judgment only in relation to the Fourth Amendment, qualified immunity, and municipal liability. (Dkt. 25.) In so doing, plaintiff appears to concede his other claims lack merit. The Court, for the reasons set forth below, finds all of plaintiff's claims properly dismissed on summary judgment.

1. <u>Federal Constitutional Claims</u>:

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A plaintiff in a § 1983 action must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Supervisory personnel may not be held liable for actions of subordinates under a theory of vicarious liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

As noted above, plaintiff alleged violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Because his allegations all relate to the use of force through Jag, the Fourth Amendment, not the Fourteenth, governs plaintiff's claims. *See Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc) ("All claims that law enforcement officers have used excessive force . . . in the course of an arrest must be analyzed under the Fourth Amendment[.]") (citations

omitted), and *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting *Graham v. Connor*, 490 U.S. 390, 395 (1989)). Nor may plaintiff pursue a claim under the Fifth Amendment, which applies only to the federal government and federal actors. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). In addition, because the Eighth Amendment applies only after conviction and sentence, *id*. at 686, it has no relevance to plaintiff's apprehension and arrest. The Court, as such, considers plaintiff's claims under the Fourth Amendment.

A claim of excessive force in the course of an arrest is analyzed under the Fourth Amendment and its "'reasonableness' standard." *Smith*, 394 F.3d at 700 (citing *Graham*, 490 U.S. at 395). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and allow for the fact an officer may need to "make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The question is "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them[.]" *Id*. at 397.

In determining the reasonableness of officers' actions, the court (1) assesses the severity of the intrusion on the individual's Fourth Amendment rights by considering the type and amount of force inflicted; (2) analyzes the government's interests by considering the severity of the crime, whether the suspect posed an immediate threat to the officers' or public's safety, and whether the suspect was resisting arrest or attempting to escape; and (3) balances the gravity of the intrusion against the government's need for that intrusion. *Lowry v. City of San Diego*, 858 F.3d 1248,

ORDER
PAGE - 9

1256-60 (9th Cir. 2017); *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). Other factors pertinent to this inquiry may include, for example, whether officers issued a warning and whether less intrusive alternatives existed for capturing or subduing a suspect. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011); *Smith*, 394 F.3d at 701; *Deorle v. Rutherford*, 272 F.3d 1272, 1283-84 (9th Cir. 2001). The Court must consider the totality of the circumstances. *Fikes v. Cleghorn*, 47 F.3d 1011, 1014 (9th Cir.1995).

   a. <u>Type and amount of force inflicted</u>:

As described by plaintiff, who was obscured from Streubel's view, Jag bit him three-to-five times, on his right leg and foot, puncturing his shoe and skin, and tried to pull him out of the bushes before being called away by Streubel. (Dkt. 24, ¶4.) The parties disagree as to the severity of plaintiff's injuries, depicted as minor by defendants and severe by plaintiff, including extreme pain and extensive, ongoing limitations. Plaintiff does not submit any medical records or other evidence in support of his allegations. Defendants submit photographs that appear to show one or two sets of bite marks on plaintiff's right lower leg and one set of bite marks on his right foot, with one puncture wound treated with a single stitch. (Dkt. 18, Ex. D.) The evidence therefore shows the force employed included several dog bites on plaintiff's right lower leg and foot, resulting in a puncture wound that required a stitch, before Streubel, after obtaining plaintiff's verbal compliance and viewing one of plaintiff's hands, called Jag off.

Even accepting plaintiff's depiction of his injuries and limitations as true, the facts in this case are not reasonably construed as reflecting a severe amount of force. *See, e.g.*, *Smith*, 394 F.3d at 701-02 (use of force severe where officers slammed plaintiff against wall, threw him to the ground, pepper sprayed him and his open wounds repeatedly, and permitted or instructed police dog to attack him three times, including once when he was pinned to the ground, resulting in skin

punctures on his neck, arm, shoulder, back, and buttock); *Miller v. Clark County*, 340 F.3d 959, 961-66 (9th Cir. 2003) (use of force considerable and serious, but ultimately reasonable, where police dog bit plaintiff's upper arm for some forty-five to sixty seconds, tearing his skin in four places, going as deep as the bone, and "shredd[ing]" the muscles underneath, before the officer found the plaintiff and the dog complied with the officer's order to release); *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (use of force severe where police dog bit plaintiff three times before achieving an effective hold and dragged him between four and ten feet, nearly severing his arm in the process). Instead, the amount of force was significant, but arguably moderate. *See, e.g., Lowry*, 858 F.3d at 154, 57 (use of force moderate where a police dog bit the plaintiff's lip, causing bleeding and requiring three stitches, the officer was closely following the dog, and the officer called the dog off quickly after the initial contact); *Beecher v. City of Tacoma*, C10-5776-BHS, 2012 WL 1884672 at *2-5, 7 (W.D. Wash. May 23, 2012) (finding significant use of force where the plaintiff and officers varied in depictions of dog bite and hold, but plaintiff's uncontroverted allegations were that he experienced intense pain at the time of the attack, was twice hospitalized and received wound treatment over the next three months, and had continuing pain, disfigurement, permanent scarring, partial loss of use, and psychological trauma).

        b.      <u>Interest in the use of force</u>:

As stated above, factors relevant to an officer's interest in the use of force, include, but are not limited to, the severity of the crime, whether plaintiff posed an immediate threat, and whether he was resisting arrest or attempting to escape. Plaintiff concedes the interest in effecting his seizure was substantial, but denies any specific information showing he posed an immediate threat, had any history of violence or actively resisting arrest, knew he was a burglary suspect, or that Streubel knew who or what was concealed in the sticker bushes.

Plaintiff, however, also concedes he jumped out of a window and fled upon seeing police arrive because he did not want to be taken into custody on a pending felony warrant, that he crawled some six feet into and concealed himself in sticker bushes in order to evade arrest, and that he saw Jag searching the property around the Harborview Road residence from his location in the bushes. It is further undisputed police also sought plaintiff as a suspect to a burglary in which witnesses reported seeing a handgun, plaintiff was identified as the individual who jumped out the window, and that probable cause for first degree burglary existed with the discovery of the victim's property, but the police had yet to find the handgun observed at the scene of the burglary. Also, whether or not plaintiff was asleep at the time, Streubel issued numerous loud verbal warnings, to which there was no response. Further, Jag's behavior and Streubel's own observations suggested someone or something unusual was hidden deep inside the sticker bushes. Plaintiff's hiding spot and failure to respond to warnings hindered his identification, the opportunity to observe whether he had the missing handgun, and his apprehension by other means. These facts and circumstances weigh strongly in favor of Streubel's interest in using the force inflicted. *See, e.g.*, *Lowry*, 858 F.3d at 1257-58 (officers responded to burglar alarm at dark commercial building, with an open suite door; plaintiff, who had been sleeping, did not respond to verbal warnings; and a reasonable officer could have concluded someone may be committing a burglary, armed, and posing an immediate threat); *Miller*, 340 F.3d at 964-65 (plaintiff posed an immediate threat to safety where he was a felony suspect wanted for attempting to flee police, in a manner evidencing a willingness to threaten others' safety and in an attempt to evade arrest; fled into dark, treacherous terrain; may have been armed; and did not respond to a warning); *Beecher*, 2012 WL 1884672 at *8 (officers faced objective concerns for their safety when pursuing a burglary suspect at night, it was unclear whether the suspect was armed, and he had fled into an obstructed area).

       c.      <u>Balancing test</u>:

The Court, finally, balances the gravity of the intrusion on plaintiff's constitutional rights against the need for that intrusion. Streubel, through Jag, employed a significant, but not severe use of force and had a compelling interest in protecting himself and others against the risks posed by a known and suspected felon, who was evading arrest, fled into an obstructed area, did not respond to warnings, and may have had a handgun. Under these circumstances, Streubel's actions were objectively reasonable and not in violation of plaintiff's Fourth Amendment rights.[3]

    2.    <u>Municipal Liability</u>:

To establish municipal liability, plaintiff must show a "policy or custom" led to the injury. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id.* at 691-94. Liability must rest on the actions of the municipality, not on the actions of an employee. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997). A claim may involve implementation of official polices or established customs inflicting the injury, omissions or failures to act amounting to a policy of deliberate indifference to constitutional rights, or ratification of a subordinate's unconstitutional conduct by an official with final policy-making authority. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled in part on other grounds in Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

Plaintiff alleges the municipal liability of Whatcom County and Sheriff Elfo through their policy, custom, and practice of allowing for the unconstitutional use of force at issue here, failure to follow or implement a constitutional continuum of force policy, and for approval and ratification

---

[3] Because the Court finds no constitutional violation, it need not and declines to address the defense of qualified immunity.

of Streubel's unconstitutional conduct. However, because plaintiff's Fourth Amendment rights were not violated, the municipal defendants cannot be found liable for the constitutional violation alleged. *Miller*, 340 F.3d at 968 n. 14; *Jackson v. City of Bremerton*, 268 F.3d 646, 653-54 (9th Cir. 2001). Plaintiff further fails to identify and support a constitutional infirmity in the Whatcom County policies governing use of force and canines and, in fact, concedes the policies "appear to generally comply with the requirements of *Graham v. Connor*[.]" (Dkt. 25 at 19.) Nor can he persist under a "custom" theory given his identification of a single event. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). In addition, while asserting deficiencies in training, plaintiff does not provide any support for or show the deliberate indifference necessary to establish a constitutional violation. *See Brown*, 520 U.S. at 404, 410 ("The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."; "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.") (citing *City of Canton v. Harris*, 489 U.S. 378, 392 (1989) (municipal liability must reflect "deliberate indifference" to a constitutional right)); *Castro*, 833 F.3d at 1076 (an objective standard necessarily applies to municipalities "for the practical reason that government entities, unlike individuals, do not themselves have states of mind.[]") The Court should, for these reasons, also dismiss plaintiff's allegations under *Monell*.

    3.    <u>State Claims</u>:

Plaintiff alleges violation of the Washington State Constitution and claims of assault and battery and outrage/intentional infliction of emotional distress. As defendants observe, because plaintiff did not file the required statutory claim for damages before filing this lawsuit (*see* Dkt. 20), his state law claims must be dismissed. RCW 4.96.020(4); *Martinez v. City of Tukwila Police*

*Dep't,* C14-1207-RSM, 2016 U.S. Dist. LEXIS 257 at *14 (W.D. Wash. Jan. 4, 2016).

Moreover, even if plaintiff had complied with the filing requirement, his claims are subject to dismissal.  First, plaintiff does not raise a viable claim under the Washington Constitution.  *See Blinka v. Wash. State Bar Ass'n*, 109 Wash. App. 575, 590-91, 36 P.3d 1094 (2001) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation.'") (citations omitted).  *See also Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1174 (W.D. Wash. 2015) ("Section 1983 does not vindicate state constitutional violations.") (citations omitted).  Second, given the absence of any Fourth Amendment violation, a claim of assault and battery necessarily fails.  *McKinney v. City of Tukwila*, 103 Wn. App. 391, 13 P.3d 631, 641 (2000) (under Washington law, a police officer is liable for assault or battery in effecting an arrest only if the officer used force unreasonable under the Fourth Amendment).  Finally, no reasonable juror could find the use of force under the circumstances at issue in this case to constitute outrageous conduct supporting a claim of outrage/intentional infliction of emotional distress.  *See generally Kloepfel v. Bokor*, 149 Wash. 2d 192, 195-96 66 P.3d 630 (2003) (outrage claim requires proof of "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.", and "must be predicated on behavior *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*.") (emphasis retained; internal quotation marks and citations omitted); *Phillips v. Hardwick*, 29 Wash. App. 382, 387, 628 P.2d 506 (1981) (while the question of whether conduct is sufficiently outrageous ordinarily lies with the jury, the court initially determines "if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability.")  Plaintiff's state claims, as

with his federal constitutional claims, should be dismissed.[4]

## CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. 16) should be granted and this matter DISMISSED with prejudice.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 5, 2021**.

DATED this 19th day of January, 2021.

Mary Alice Theiler
United States Magistrate Judge

---

[4] Again, because the Court finds these claims subject to dismissal, it need not and declines to address defenses raised. (*See* Dkt. 16 at 16-17.)

ORDER
PAGE - 16